Billy C. MARSHALL, a/k/a Billy Gene Marshall, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–550.

Court of Criminal Appeals of Oklahoma.

March 16, 1977.

Cecil G. Drummond, Drummond & Raymond, Pawhuska, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Michael L. Darrah, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Billy C. Marshall, a/k/a Billy Gene Marshall, hereinafter referred to as defendant, was originally tried and convicted in District Court, Osage County, Oklahoma, on the charge of Robbery By Fear, After Former Conviction of a Felony, and was sentenced to ten (10) years' imprisonment. He appealed, won a new trial, was tried and convicted a second time, and was sentenced to thirty (30) years' imprisonment. From said judgment and sentence, defendant has filed this timely appeal.

Briefly stated, the testimony shows that the defendant entered the house of 63-year-old Verlie Mae Park, in Skiatook, Oklahoma, on May 18, 1973, after ascertaining that her husband was not at home. Mrs. Park testified the defendant grabbed her, threw her on the living room sofa, and "told me if I screamed or said anything he'd kill me." (Tr. 124) She was pushed into a bedroom and her house ransacked when she did not produce money as demanded by the defendant. She also testified that a second intruder aided the defendant in searching her house, but she could not identify him. The defendant took her jewelry box, purse and some old gold coins, and before leaving he took off her clothes and put her in a closet. After the robbery Mrs. Park was admitted to a hospital, suffering from a stroke.

Darie Monday said that on May 18, 1973, the defendant and another person came to his house. He saw a television set, some shotguns and a jewelry box in defendant's car, and said that the defendant had two gold coins in his possession which were later sold to a coin dealer. He said the defendant's friend spoke of burglarizing a house, and the defendant said that he had tied the lady in the house and put her in a closet.

Wade McKee, a rare coin collector, testified the defendant sold him the two gold coins placed into evidence by the State as belonging to Mrs. Park. Larry Robinson testified he saw several credit cards with the name of Earl Park printed on them in the defendant's car, and said the defendant told him he had robbed a woman. Earl Park is the husband of the victim.

In a hearing outside the presence of the jury, senior investigator Larry Johnson of the Tulsa Police Department said he twice read the defendant his rights and each time the defendant said he understood them, and defendant did not request an attorney. Defendant signed a "rights waiver," and then signed a statement. Roy Frye, Jr., also charged in the crime, testified that he was arrested with the defendant, denied anything was said to him on arrest, but admitted that something was read to him which he did not fully understand. He said the defendant requested an attorney several times. At the end of the hearing, the court denied defendant's motion to suppress the confession.

Johnson testified that the statement contained defendant's responses to his questions regarding the Park robbery. He said after the statement was typed out, "I then had Mr. Marshall read it along with me." (Tr. 644) During that reading two questions were corrected; one was penciled through and the defendant initialed it. The statement was admitted but not read into the transcript and does not appear in any part of the record before this Court.

An Osage County jailer testified that when he inventoried the defendant's personal possessions taken on his arrest, he discovered German money identical to that taken in the Park robbery.

The only witness for the defense was Raymond Lewis, an inmate at the Oklahoma State penitentiary, serving time for

murder. He and the defendant shared a cell at the Osage County jail. He said it was his opinion, based on association with other criminals, that the defendant "wasn't guilty." (Tr. 765) This was done without objection.

█ Defendant first assigns as error the trial court's overruling of his motion to suppress his confession as not meeting the requirements as set out in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant dwells at length on the Miranda mandates for accepting a confession. He correctly notes that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628.

The United States Supreme Court went on to say that a valid waiver will not be presumed simply from the silence of the accused after warnings are given, and affirmed its ruling in an earlier case which said, "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Carnley v. Cochran,* 369 U.S. 506, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), as quoted in *Miranda v. Arizona,* ibid.

Procedure for determining the voluntariness of the confession is found in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964):

"A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined. . . ." 378 U.S. at 380, 84 S.Ct. at 1783.

█ In the present case, the court held a hearing out of the presence of the jury at which the Tulsa police officer who took the defendant's statement and a co-defendant testified. The officer testified he twice advised the defendant of his Miranda rights and received assurances on both occasions that the defendant understood them:

"I advised them that the second time they were under arrest, that, they at that time had certain rights, those rights were first of all to remain silent, the right to—that any statements made could be and would be used against them in a Court of law, the fact they had a right to have an attorney present either of their own choosing or one appointed by the Court, that the attorney could be with them during any and all questioning, they had a right to stop answering questions at any time they desired." (Tr. 533)

\* \* \* \* \* \*

"I asked them individually, I said, 'Do you understand what I just said?' and they said, 'Yes.' And I'd go to the next one and I'd say, 'Do you understand what I just said?' and he'd say, 'Yes.' And I asked 3 of them, individually, separately, one, two, three." (Tr. 545)

\* \* \* \* \* \*

"I asked him again if he understood the rights that were there before him [the waiver of rights form], and he stated he did and I asked him then if he would sign the waiver the fact that he understood the rights and was willing to make a statement and he signed the waiver in my presence stating that he was indicating that he understood his rights, was recognance [sic] of them and willing to talk to me." (Tr. 557)

The defendant refers us to testimony he gave at his prior trial but he fails to include it in the record here on appeal. Assuming it was properly before us (defendant denied signing a waiver form and said he was under "mental coercion" at the time of the taking of the alleged statement), it does not convince us that the trial court erred in overruling defendant's motion to suppress his statement, and we therefore find this assignment of error to be without merit.

█ In defendant's second assignment of error, he contends the trial court should have granted his request for mistrial when the prosecutor supposedly commented on the defendant's failure to testify.

The comment here objected to occurred at the start of the redirect examination of defendant's witness Raymond Lewis:

"BY MR. DRUMMOND: You stated you based [your] opinion on the way he acted when you asked him what?

"MR. MATTINGLY: I object, Your Honor, the defendant is available.

"MR. DRUMMOND: He opened it upon on cross.

"THE COURT: Sustain the objection." (Tr. 767)

Defendant cites *Buchanan v. State,* Okl. Cr., 523 P.2d 1134 (1974), but it refers to the prosecutor's comments on the failure of the defendant and her parents to come forward before trial with her alibi defense. Such is not the question in the case at bar.

After careful research, this Court is of the opinion that the prosecutor was merely commenting on the evidence which the counsel for the defense was attempting to elicit from the witness, and was not commenting on the failure of the defendant to testify.

In *Royal v. Anderson,* 373 F.Supp. 809, 810 (E.D.Okl.1973), the Court said:

"The applicable standard is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment upon the failure of the defendant to testify. . . ." (Citations omitted)

We are of the opinion the jury would not so infer; and, again, we find this assignment of error to be meritless.

 Defendant, in his final assignment of error, contends that the sentence of thirty (30) years was excessive in light of both the evidence and the ten (10) year sentence defendant received at his first trial. The defendant argues that to hold otherwise would in effect deny the defendant the right to appeal from errors committed by the trial court, since he would be placing himself in jeopardy in receiving a greater sentence upon a retrial of the case.

Defendant cites no authority for such argument, and this Court has often held that in light of bare allegation of error without supporting authority we will not search the books for such authority. *Sandefur v. State,* Okl.Cr., 461 P.2d 954 (1969).

We would note, however, that the sentence is within the punishment prescribed by statute, and we so dismiss this assignment of error.

We, therefore, find that the judgment and sentence appealed from should be and, hereby, is *AFFIRMED.*

BUSSEY, P. J., and BRETT, J., concur.