Charles W. REEVES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–13.

Court of Criminal Appeals of Oklahoma.

Oct. 5, 1979.

Malcolm Oyler, Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Mary Kathleen Rhodes, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Charles W. Reeves, hereinafter referred to as defendant, was charged by information in Case No. CRF–76–269 with the crime of Burglary in the First Degree, After Former Conviction of a Felony, pursuant to 21 O.S.1971, § 1431. In the District Court, Muskogee County, a jury found him guilty and assessed his punishment at forty (40) years' imprisonment.

At about 10:00 p.m. on September 3, 1976, the complaining witness, Kelly Oliver, alerted police when she heard a scraping noise at the sliding glass door in her apartment bedroom. When she saw the draperies covering the door move, she again called the police. Immediately thereafter, Ms. Oliver saw a patrol car approaching and ran out the front door.

After being apprehended, the defendant accompanied Muskogee Policeman Marshall Helsley and Ms. Oliver to jail. Ms. Oliver was a commissioned police officer who had been working undercover at a local bar, the Cantina Villa, one month prior to the burglary. When questioned regarding the burglary, the defendant answered, "I don't know why I did it," and he further admitted being at the Cantina Villa earlier on the evening of the burglary.

Ms. Oliver's sliding glass door had been opened four inches at the bottom, where a board had been placed to keep it closed, and 18 inches at the top. The arresting officer testified that marks on the door frame could have been made by the defendant's screwdriver, and, although the lab tests were inconclusive, black tar found on the screwdriver resembled that on the door frame. Furthermore, on the evening of the crime, there was no wind to explain the movement of the draperies.

■ As his first assignment of error, the defendant contends that the trial court erred in admitting testimony of the confession without having held a *Jackson v. Denno*[1] hearing and without a proper predicate

first having been laid. Insofar as we find the second contention meritorious, we find it unnecessary to discuss the first.

The defendant complains that, over his objection, the officer was permitted to relate what the defendant had said while in custody, without the officer first having established that the defendant had knowingly and intelligently waived his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In this regard, Officer Helsley testified that the police department has a form which "gives you the *Miranda* warning" and that he handed the form to the defendant, who handed it back without saying anything. The officer then testified as follows:

"I said, 'Okay, I will read it to you and explain it to you.' So I did all this. "I explained it to him what the form consisted of. By him signing it, it still didn't mean that he couldn't have his lawyer, or he could talk to me, or anything. To sign it meant that he understood it, and he understood what was on the form."

The officer further testified that the defendant answered, "Yes" when asked if he understood what was on the form and that he signed the form; but the form was never introduced into evidence, nor were the contents of the warning further elaborated upon at trial.

The warning testified to by the officer falls far short of that required by *Miranda*, and the State failed to sustain its heavy burden to demonstrate that the defendant had waived his privilege against self-incrimination and his right to counsel at the time of questioning. *Marshall v. State*, Okl. Cr., 561 P.2d 1370 (1977); *State v. Harp*, Okl.Cr., 457 P.2d 800 (1969). We are therefore of the opinion that substantial error was committed when the officer was permitted to testify regarding the defendant's statement.

■ The defendant next complains that he was denied a fair trial when the District

---

1. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Attorney made improper and prejudicial remarks during closing argument. First, the prosecutor made comments which could be interpreted to mean that the trial court considered the defendant guilty:

". . . If the evidence was not before you to prove each and every element of the crime, if you believe the evidence, then you wouldn't have this case before you.

"If we hadn't shown anything that if you believe it would prove each and every element of this crime, it wouldn't be before you, because the judge would have had to have taken it away and dismissed the case."

In *Swenson v. State*, Okl.Cr., 525 P.2d 1395 (1974), we held comments in closing argument improper where the prosecutor stated the case would not have been before the jury unless the judge had determined constructive delivery of marihuana had been established. In the instant case, the argument to the jury was technically correct in that the trial court had ruled that the State had established the elements charged sufficient to override a demurrer, but proof of the defendant's guilt was dependent upon the jury's findings of facts. However, we are of the opinion that such a comment could be interpreted by the jury, unschooled in trial procedures, to mean, "The judge thinks we proved the case." As such, while technically valid, the statement could be misleading to the jury as to its role as trier of the facts.

The resulting prejudice was further bolstered by the unobjected to comment at the close of the prosecutor's argument:

". . . And, now, all of my efforts and the police department's efforts, and Judge Rogers' efforts, are in your hands."

In both instances and particularly when viewed together, the prosecutor exceeded the bounds of proper argument by implying that the trial court lacked impartiality and, in fact, favored the State's case.

The District Attorney also commented on the defendant's constitutional presumption of innocence when he stated:

"All you have to do is look at the testimony that's come before you and make a simple decision, because there is only one decision to make. Reasonable doubt.

"Mr. Settle harped on that, and I have one comment that I have used before, I don't believe to any of you all, that I read somewhere, and that is that the veil of innocents (sic) to which we cloak defendants in our criminal system is not intended to be a brick wall of protection for the guilty."

In *Robinson v. State*, Okl.Cr., 574 P.2d 1069 (1978), we held that since determination of guilt is an issue for the jury, it is improper for the prosecution to state that the defendant is guilty and, therefore, not protected by the presumption. The Attorney General distinguishes *Robinson* by describing the comment in the instant case as a definition of the presumption's purpose as opposed to a direct reflection on the defendant's guilt.

■ Nevertheless, we hold that a statement which implies that the presumption of innocence is to be selectively applied indicates a basic misunderstanding of our judicial system. The statement is not only misleading, it is an erroneous interpretation of this presumption so crucial to the constitutional operation of our adversary process.

Furthermore, the defendant complains that the District Attorney went outside the record and sought to prejudice the jury by attempting to associate the defendant with the criminal element as follows:

"Something that I always try to do in a closing argument is to give you a theory of the crime, to give the jury the picture of what must have been, the thing that happened and why it happened.

"Now, I think that we have painted as good a picture as possible of what did happen and why it happened. But, why it happened is a mystery. I don't have a theory for you this time. I don't know if thie (sic) defendant was breaking into that apartment for the purpose of raping Kellie Oliver, for the purpose of stealing—

"MR. SETTLE: Your Honor, I'm going to object to that reference. It is assuming facts not in evidence.

"THE COURT: The attorneys can draw reasonable inferences. I will over-rule the objection.

"MR. FITE: Whether he was breaking in there to rape Kellie Oliver; whether he was breaking in there to steal possessions; whether he was breaking in there to steal evidence that might be used in prosecutions that she had been working on—

"MR. SETTLE: Your Honor, I'm going to object to that.

"THE COURT: I'm going to sustain the objection to the last statement, Mr. Fite, and instruct the jury not to consider it.

"MR. FITE: Thank you, Your Honor.

"I don't know whether there was any connection of Kellie Oliver having been employed at the Cantina Villa, and this defendant admitting that he had been there that night.

"Kellie Oliver had come out of undercover approximately a month before. She had gone to bed that night. She had been involved in the criminal element. And all of a sudden, someone is breaking in her back door. . . ."

Also, the District Attorney stated:

"Well, now ladies and gentlemen, [let] me tell you something here. The person involved in this was an [employee] of this office that had been working closely with the police officers in this town in an undercover capacity, working in and with the criminal element."

■ Counsel generally has the right to discuss fully the evidence and arising inferences. *Wright v. State*, Okl.Cr., 531 P.2d 696 (1975). We agree with the trial court in this instance that the prosecutor was entitled to reflect on the defendant's intent in attempting this entry. We disagree, however, that the evidence provided a reasonable basis to infer intent to commit a specific crime such as larceny or rape.

We further agree that the testimony at trial, consisting solely of Ms. Oliver's statements that she had worked undercover at the Cantina Villa where the defendant had been in attendance, did not provide a reasonable basis for inference that the defendant was seeking to steal evidence obtained during Ms. Oliver's investigation.

Additionally, it was improper for the District Attorney to continue in this vein by implying the defendant's association with the criminal element. This reference may be related to the defendant's intent, but we are of the opinion that the prejudice resulting therefrom far outweighed the probative value of this extremely attenuated inference. See *Murphy v. State*, Okl.Cr., 565 P.2d 694 (1977).

■ While defense counsel objected to several of these comments, the State contends that others were not properly preserved and, therefore, waived. Nevertheless, we conclude that the combined effect of these remarks was sufficiently prejudicial as to adversely affect the fairness of the proceedings. See *Lewis v. State*, Okl. Cr., 569 P.2d 486 (1977).

Since the evidence in this case is anything but overwhelming and insufficient to sustain this conviction, we are compelled to find that the errors complained of were sufficiently prejudicial to have denied the defendant a fair trial.

We therefore *REVERSE* and *REMAND* for proceedings consistent with this opinion.

CORNISH, P. J., concurs in results.

BUSSEY, J., dissents.