**James Alvin MOORE, III, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–8.**

Court of Criminal Appeals of Oklahoma.

Nov. 14, 1983.

Rehearing Denied Dec. 20, 1983.

---

James Alvin Moore, III, appellant, was convicted of Burglary in the First Degree After Former Conviction of Felony, and of Rape in the First Degree After Former Conviction of Felony in Tulsa County Case No. CRF–80–4156. The jury assessed punishment as 199 years' and 499 years' imprisonment, respectively. Appellant perfected an appeal to this Court and judgments and sentences are AFFIRMED.

Johnnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen. of Okl., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

James Alvin Moore, III, was convicted by a jury in Tulsa County of Rape in the First Degree AFCF and of Burglary in the First Degree AFCF and sentenced to 499 years' and 199 years' imprisonment, respectively.

Moore was arrested upon the conclusion of an investigation by a task force of twenty-five Tulsa police officers in connection with a number of burglaries and rapes. These crimes occurred over a six month period and were extensively reported by the news media. In each instance, the assailant required his victims to shower and he came to be dubbed by the news media as the "Showerstall Rapist."

Appellant first contends that the trial court erred in failing to grant his motion for change of venue. His pretrial motion for change of venue was denied. The trial court advised defense counsel the motion could be reurged following voir dire and before the swearing of the jury. Again at this time the motion was denied; the trial court finding that the appellant had failed to meet his burden of showing that a fair and impartial trial was impossible. *Thomsen v. State*, 582 P.2d 829 (Okl.Cr.1978).

This Court has consistently held that granting of a motion for change of venue rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of clear abuse. *Id.* We find in this instance that the trial judge

carefully considered the evidence presented on appellant's motion. The trial judge accompanied appellant's attorney and the prosecutor to a local television station to view the news reports covering the crimes involved. The trial judge expressed surprise that the total air time amounted to only 31 minutes for the one year period. The judge also reviewed newspaper clippings, and at trial, allowed an exhaustive voir dire of potential jurors.

The jurors were called in groups of three or four individuals, and as jurors for the panel were selected, they were instructed to wait in a separate room. Practically each person questioned acknowledged some familiarity with the news reports of the crimes. Some even recognized appellant by name or face from these reports. However, the trial judge scrupulously excused those potential jurors who indicated they might not be able to set aside their knowledge or opinions of the crimes and impartially and fairly judge the appellant on the evidence presented at the trial. This is all that can be asked of jurors. 22 O.S.1981, § 662; *Frye v. State*, 606 P.2d 599 (Okl.Cr.1980). We find no error.

■ Appellant next argues as error the trial court's refusal to commit him to a state hospital for treatment of his alleged mental problems. Appellant's counsel felt he was incompetent to stand trial and a competency hearing was conducted on May 26, 1981. At the conclusion of the hearing, the judge ruled that he was competent and trial was scheduled for June 23, 1981. Title 22 O.S.1981, §§ 1175.1–75.8 directs the trial judge to determine at a competency hearing whether a doubt exists of a criminal defendant's competency to understand the nature of the charges and proceedings brought against him and whether he is able to effectively and rationally assist counsel in his defense. If no doubt arises, criminal proceedings should then resume.

The appellant called one witness, Dr. Garcia, who had examined appellant while he was at Eastern State Hospital for observation. Dr. Garcia testified that appellant was incompetent to stand trial, but could regain competency after four to six weeks of hospital treatment. Dr. Garcia conceded that other health professionals at the hospital disagreed with his diagnosis. The State called a jailer, a police officer and a paramedic who had administered prescribed drugs to appellant. Each stated that they had become acquainted with appellant and believed he was rational and understood his circumstances. These three had each dealt with him on a day-to-day basis.

We hold that the trial court did not abuse its discretion in finding that no doubt arose as to appellant's competency. *Beck v. State*, 626 P.2d 327 (Okl.Cr.1981). The trial judge determined that appellant had the burden of presenting clear and convincing evidence of incompetency to overcome the presumption of competency. The trial judge found he was not required as the trier of fact, to give controlling effect to the opinion of the expert, and instead found in accord with the State's lay witnesses. *Bowers v. State*, 648 P.2d 835 (Okl.Cr.1982). His finding is supported by competent evidence and will not be disturbed on appeal.

■ Appellant contends that the meaning of insanity is to be determined by 43A O.S.1981, § 3, and that the trial court erred in refusing defense evidence at trial that appellant was insane under that statute at the time of committing the offenses. Appellant asserts that the *M'Naghten* test of insanity was overruled by the enactment of 43A O.S. § 3. This statute was initially enacted in 1947. This Court has never construed this statute as defining the criminal defense of insanity, though 22 O.S.1981, § 1161 provides that Title 43A does govern commitment of criminal defendants found to be mentally ill at the end of a trial. Section 2 of Title 43A provides that the purpose of the act is to provide for the humane care and treatment of those mentally ill or retarded. Though subsection (k) states that the word insanity in other laws shall now have equal significance as the words "mentally ill," the stated purpose of the act negates a legislative intent to redefine the criminal defense of insanity. We have consistently held that the *M'Naghten* rule is the exclusive test of insanity which prevents criminal liability. *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983). Thus, there was

no error in disallowing testimony from appellant's expert witness that he was insane according to standards of Title 43A.

■ Next, appellant complains of improper prosecutorial comment. The first statement complained of is as follows:

> Mr. McCarthy stands here and tells you that we don't have a case. If we didn't have a case, why did he spend all that time trying to punch a hole in it? If we don't have a case, there's no need for you to have instructions; no need to have verdict forms.

Appellant claims that this statement improperly conveyed the prosecutor's personal opinion of appellant's guilt and invaded the province of the jury's role as trier of fact. He relies on *Reeves v. State*, 601 P.2d 113 (Okl.Cr.1979), wherein we held it error for the prosecutor to tell the jury that the judge would not send the case to them if the State had not proven every element of the alleged crime. In that case we reasoned the statement, while technically correct, could be interpreted by the jury to mean that "the judge thinks we proved the case." *Id.* at 116. In the case at hand, however, such an inference is too oblique to be construed to mean the same. It was not bolstered by additional statements of like import as was done in *Reeves.* In the present case, the trial judge at this point again reminded the jury that the statements of the lawyers were not evidence.

■ Appellant also cites as error a comment made by the prosecutor in his closing statement to rebut the charges made by defense counsel in closing argument that the victim never identified appellant as her assailant. The prosecutor stated:

> Why didn't they ask or they could have asked what the description was. I remember that Frank talked to her; don't you? Did he ask? No, he didn't ask. *We already know what the description was.* (Emphasis added.)

To this, defense counsel objected and the court sustained the objection. Appellant claims that the italicized portion is a direct reference to his notoriety as the media's identification of "the Shower stall Rapist." We are hard pressed to find such a clear reference in this statement. The media's epithet for the culprit of the series of burglaries and rapes occurring in Tulsa had not been used during the trial to refer to appellant. It is equally plausible that the prosecutor was referring to the description of her assailant which was given by the prosecutrix during the trial. Regardless, we held in *Brown v. State*, 563 P.2d 1182 (Okl.Cr. 1977), that ordinarily improper remarks made by the prosecutor provoked by and in response to argument of defense counsel will not be grounds for reversal. *Id.* at 1189. We hold that the comments in this instance do not constitute grounds for reversal.

■ Appellant also complains of the prosecutor's comment that "the evidence from that witness stand was uncontradicted in any way." However, we hold, as we have on many occasions in the past, that this is not improper comment on appellant's failure to testify which would violate 22 O.S. 1981, § 701. *Cameron v. State*, 561 P.2d 118 (Okl.Cr.1977). We do not find that our dicta in *Hunt v. State*, 601 P.2d 464, 469–70 (Okl.Cr.1979), describing instances that this rule would not apply is controlling here. Appellant's testimony alone is not the only evidence appellant could have presented to contradict the State's evidence, so the exception described in *Hunt* whereby only the defendant's testimony could have contradicted the State's evidence does not apply.

■ During closing argument in the sentencing stage, the prosecutor recommended to the jury sentences of 875 years on the burglary conviction, and 999 years on the rape conviction. Defense counsel had previously moved that the prosecutor not be allowed to make sentence recommendations to the jury. Appellant argues that the recommendation was improper and caused the jury to assess excessive sentences of 199 and 499 years' imprisonment. We have noted recommendations of sentences by a prosecutor to be unfair when they were purportedly raised on the prosecutor's "experience" or "expertise." *Cobbs v. State*, 629 P.2d 368 (Okl.Cr.1981); *President v. State*, 602 P.2d 222 (Okl.Cr.1979). But we have also held that a recommendation was not unfair when the jury did not assess as great

a penalty as that recommended, and it was not based on the prosecutor's expertise. *Raper v. State,* 560 P.2d 978 (Okl.Cr.1977). We hold that the error complained of is without merit.

Finally, appellant contends that the sentences are excessive. Appellant compares his criminal acts to other rapes involving brutality of a degree perhaps greater than manifested by appellant, to demonstrate an excessive sentence. Excessiveness is determined from a study of all the facts and circumstances surrounding each individual case. *Dodson v. State,* 562 P.2d 916 (Okl.Cr.1977). We cannot say his sentences are excessive upon consideration of the violent nature of the crimes committed and of the evidence of appellant's guilt.

Finding no error warranting reversal or modification, the judgments and sentences are AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.