Charles Enoch BROWN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–84–626.

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1987.

Rehearing Denied Oct. 6, 1987.

Terry J. Hull, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Charles Enoch Brown, was tried by jury and convicted of First Degree Murder (21 O.S.Supp.1982, § 707.-7(B)) in Creek County District Court, Case No. CRF–83–288, before the Honorable Don Thompson, District Judge. The jury set punishment at life imprisonment. Judgment and sentence was imposed in accordance with the jury's verdict. We affirm.

Briefly stated, the evidence showed that on the morning of October 5, 1983, Oklahoma Highway Patrol Trooper Leon Bench stopped a Subaru pickup being driven by the appellant one mile north of Sapulpa on State Highway 97. A driver's license check by Bench revealed that appellant's license had been suspended due to financial responsibility for a car accident. Trooper Bench requested a wrecker for impoundment purposes, and then advised the dispatcher that the appellant was in custody.

The appellant then exited the patrol unit, obtained his .44 magnum single action revolver from a clothes basket in the back of his pickup, and fired three shots at Bench. Two of the bullets passed through both the front and rear windshields of the patrol unit, and a third bullet passed through the base of the dome light on the roof. Bench later died as the result of one of the bullet fragments striking him in the forehead. An examination of the Trooper's service revolver, which was found on the pavement next to Bench, his backup weapon strapped to his ankle, and his Mini–14 rifle strapped to the inside of the driver's door, revealed that none of the weapons had been fired.

A passing motorist pursued the appellant, who left the scene in his Subaru truck, and obtained his tag number. The appellant's personal identification card was found on the dashboard of the patrol unit. Several troopers proceeded to the appellant's rural residence, discovered the Subaru truck abandoned, and noticed that the engine and radiator were still hot. The appellant emerged from the woods carrying a handgun and rifle, and when Lieutenant Nichols ordered him to stop, the appellant fired a shot at Nichols. Two of the troopers returned fire, but appellant disappeared into the woods. Following reports of a citizen sighting, the appellant was taken into custody on October 6, 1983. A tactical team tracked his footprints from the arrest scene and located a 30–30 rifle, a .45 Browning automatic pistol, and a .44 magnum revolver which was identified as the murder weapon.

Deputy Chief Medical Examiner Robert Hemphill testified that Trooper Bench died as the result of a single gunshot wound to the head. Trooper Ken Stafford testified that he had stopped the appellant on August 27, 1983, for failure to dim his headlights. Stafford subsequently arrested appellant for transporting loaded firearms, and confiscated a shotgun, a .45 Thompson semi-automatic, and a 9 millimeter Smith and Wesson pistol. A driver's license check revealed that the appellant was under suspension for financial responsibility.

At trial, the appellant admitted shooting at Bench, but claimed that he shot at him in self-defense after Bench had become angry, called him a liar and shot at him. Appellant also raised the defense of insanity. Appellant testified that he knew the difference between right and wrong, and that he believed it was wrong to shoot at someone. Dr. Jane Reudi, a psychologist at Eastern State Hospital in Vinita, Oklahoma, testified on behalf of the appellant at trial. Dr. Reudi diagnosed appellant as a paranoid having feelings of persecution. Dr. Reudi testified that although it was possible that appellant's paranoia could affect his ability to determine right from wrong, she did not make a determination of whether the appellant was sane at the time of the shooting.

In rebuttal, Dr. Mason Robinson, a psychiatrist at Eastern State Hospital, testified that appellant's paranoia was mild, and that in his professional opinion the appellant was sane at the time of the offense.

I.

In his first assignment of error, the appellant asserts that the trial court erred in refusing to grant a request for a change of venue on the basis of pretrial publicity. Although the motion for a change of venue was properly accompanied by the affidavits of three credible Creek County residents, in compliance with 22 O.S.1981, § 561, this is not dispositive. The affidavits merely raise a question of fact to the trial judge, whose ruling will not be disturbed absent a clear abuse of discretion. *Walker v. State,* 723 P.2d 273, 277–78 (Okl.Cr.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

*See also Jefferson v. State,* 675 P.2d 443, 446 (Okl.Cr.1984). There is a legally rebuttable presumption that a defendant can receive a fair and impartial trial in the county in which the offense was committed and, consequently, the burden of persuasion is on the defendant. *Robison v. State,* 677 P.2d 1080, 1083 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Under *Robison,* the defendant must show by clear and convincing evidence that he was prejudiced as a result of jurors being specifically exposed to adverse publicity. *Id.* A mere showing that the pretrial publicity was adverse to the defendant is not sufficient. *Id.*

In *Walker, supra,* this Court applied a two-pronged test for appellate review of alleged due process violations on the basis of prior knowledge by jurors and pretrial publicity, which was set forth by the United States Supreme Court in *Murphy v. Florida,* 421 U.S. 794, 798–99, 95 S.Ct. 2031, 2035–36, 44 L.Ed.2d 589 (1975). First, prejudice may be presumed where the fact pattern reveals that "the influence of the news media, either in the community at large or in the courtroom itself, pervaded the proceedings." *Id.* at 799, 95 S.Ct. at 2035. *See, e.g., Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963).

In support of his motion for a change of venue, appellant claimed that an Assistant District Attorney commented that the appellant stated "that he would kill the next police officer he encountered." The record does not show the origin of this statement. Kim Hudson, a news reporter in Tulsa, testified during trial that she overheard a similar statement at the scene of the shooting, and that on October 6, 1983, she asked the appellant on camera "if he said he would shoot the next trooper who stopped him on a traffic citation?" (Tr. 1103) Appellant claims that he was prejudiced by his affirmative answer to that question. A videotape of this was introduced at trial as State Exhibit No. 73.

The videotape was not included in the record on appeal, and appellant asserts in proposition five that reversible error occurred when the exhibit was lost or destroyed. Although counsel for appellant has submitted an affidavit showing that neither the Creek County Court Clerk nor trial counsel was in possession of the tape, and that appellate counsel contacted television station KJRH in Tulsa in an attempt to locate the tape, such attempt was not successful in determining whether a copy of the videotape was in existence. The affidavit further states that appellate counsel was advised that "a copy of the edited broadcast tape, if in existence, would not be made available without a subpoena." The affidavit does not relate any attempt to obtain a copy of the videotape, if in existence, by subpoena. It is the responsibility of the defendant to provide a sufficient record to allow review of alleged errors on appeal. *Guthrie v. State,* 679 P.2d 278, 280 (Okl.Cr.1984). We believe that the tape is not absolutely essential to the determination of this issue. Even agreeing that the videotape showed the foregoing, we find that the Appellant has failed to show how the facts in the instant case arose to the egregious level found to be presumptively prejudicial in *Sheppard, Estes* or *Rideau,* where the trial was utterly corrupted by press coverage.

Second, because the fact pattern is not sufficiently egregious to give rise to a presumption of prejudice, the so-called "totality of circumstances" must be examined to determine whether the defendant received a "fundamentally fair" trial. *Murphy, supra,* 421 U.S. at 799, 95 S.Ct. at 2036. A careful review of the voir dire examination shows that the trial judge "scrupulously excused those potential jurors who indicated they might not be able to set aside their knowledge or opinions of the crimes and impartially and fairly judge the appellant on the evidence presented at the trial." *Moore v. State,* 672 P.2d 1175, 1177 (Okl. Cr.1983). Each juror exposed to publicity concerning the crime through the news media indicated that they could render a fair judgment on the evidence in court. None of the jurors' comments suggested an im-

partiality that could not be laid aside. *See Walker, supra,* at 278. In short, appellant has failed to show that the trial setting was utterly corrupted by press coverage so as to be inherently prejudicial or that the jury selection process permitted an inference of actual prejudice. *See Dobbert v. Florida,* 432 U.S. 282, 302–03, 97 S.Ct. 2290, 2302–03, 53 L.Ed.2d 344 (1977); *Walker v. State, supra,* at 278–79 (Okl.Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986).

■ Appellant further asserts that the trial court erred in not allowing each potential juror to be questioned on an individual basis. The appellant, however, has made no showing establishing that the trial court abused its discretion in this regard. *See Foster v. State,* 714 P.2d 1031, 1037 (Okl. Cr.1986), *cert. denied,* — U.S. —, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). We must also reject appellant's claim that "death-qualifying" the jury denied him a jury consisting of a fair and impartial cross-section of the community or that the jury was "conviction prone." *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 1766–67, 90 L.Ed.2d 137 (1986); *Walker, supra,* at 282. Accordingly, this assignment of error is without merit.

## II.

■ Appellant claims in his second assignment of error that the trial court erred in overruling his motion for funds for a private psychiatrist. It is now well settled that when an indigent criminal defendant makes a preliminary showing to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, he is entitled to access to a competent psychiatrist. *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985). Mere undeveloped assertions that the requested assistance would be beneficial is insufficient to establish a due process violation. *See Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985). At a minimum, *Ake* requires that the defendant's allegations be undergirded with evidentiary support and particularized facts showing that the de-

fendant's sanity at the time of the offense was seriously in question. *See Cartwright v. Maynard,* 802 F.2d 1203, 1211–12 (10th Cir.1986).

■ It is unnecessary to decide whether the appellant made the required preliminary showing, however, because the record demonstrates that the appellant had access to Dr. Jane Reudi, a psychologist, and Dr. Mason Robison, a psychiatrist, both of whom practice at Eastern State Hospital in Vinita, Oklahoma. Dr. Reudi testified for the defense at trial that the appellant's paranoia could have affected his ability to distinguish between right and wrong. Trial counsel did not request Dr. Reudi to determine whether the appellant was sane at the time of the offense. Dr. Mason Robison testified in rebuttal that he examined the appellant and in his opinion the appellant was sane at the time of the offense.

The *Ake* decision clearly qualified its holding by stating that:

> This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own.

*Ake, supra,* 470 U.S. at 83, 105 S.Ct. at 1097. *Ake* is clearly distinguishable from the instant case, because in *Ake* there was no expert testimony for either side as to the defendant's sanity at the time of the offense. *Id.* at 72, 105 S.Ct. at 1091. Thus, the risk of an inaccurate resolution of sanity issues, which was present in *Ake,* was not present here. We cannot say the appellant was deprived of the basic tools of an adequate defense consistent with *Ake.* An indigent defendant is not entitled to public funds to "shop around" until he finds a "hired gun" with a favorable opinion. *See Palmer v. State,* 486 N.E.2d 477, 482 (Ind.1985); *State v. Anaya,* 456 A.2d 1255, 1264 (Me.1983). In addition, the appellant testified that he shot the trooper in self-defense. Thus, the appellant's "sole" defense was not insanity. For all of the foregoing reasons, we find that this assignment of error is without merit.

## III.

In his third assignment of error, appellant asserts certain errors with regard to the instructions. First, appellant urges that the trial court erred in refusing to give requested instructions on first degree manslaughter. Appellant's primary argument is that 21 O.S.1981, § 444 distinguishes between misdemeanor and felony escapes from lawful custody, and because the escape here was at most a misdemeanor, an instruction on misdemeanor-manslaughter under 21 O.S.1981, § 711(1) was required. The appellant was charged alternatively with malice aforethought and felony-murder under 21 O.S.Supp.1982, § 701.7(A) & (B). Section 701.7(B) does not distinguish between misdemeanor and felony escapes from lawful custody, but expressly provides that "[a] person ... commits the crime of murder in the first degree when he takes the life of a human being, regardless of malice, in the commission of ... *escape from lawful custody....*" (emphasis added) The State contends, and we must agree, that the specific felony-murder statute prevails over the general escape from lawful custody statute. *See Jones v. State,* 507 P.2d 1267, 1270 (Okl.Cr.1973) (specific statute controls over general statute). Initially, we note that the language of "any felony" which was present in 21 O.S.1971, § 701(3) was deleted from our current Section 701.7(B) which was enacted in 1976. Under rules of statutory construction, the foregoing change in language indicates a change in legislative intent. *See Irwin v. Irwin,* 433 P.2d 931, 934 (Okla. 1965). Statutes are to be construed so as to effectuate their purposes. *Owens v. State,* 665 P.2d 832, 834 (Okl.Cr.1983). We believe that the Legislature has expressed a clear and unambiguous intent that Section 701.7(B) was designed to deter escapes from lawful custody because of the inherent danger to law enforcement officers in such situations. In its wisdom, the Legislature has determined that escapes from lawful custody, whether they are denominated misdemeanors or felonies, are fraught with danger to law enforcement officers, as the instant case so tragically demonstrates. The risk of lethal violence is the same,

regardless of whether the escape constitutes a felony or a misdemeanor. Therefore, we believe that the clear purpose of Section 701.7(B) would be improperly thwarted by a construction limiting its scope to only felony escapes.

Appellant has cited *Franks v. State,* 636 P.2d 361 (Okl.Cr.1981), *cert. denied,* 455 U.S. 1026, 102 S.Ct. 1729, 72 L.Ed.2d 147 (1982), to support his contention. Initially, the *Franks* case is distinguishable from the instant case because in *Franks* the offense occurred in 1977, prior to the enactment of 21 O.S.1981, § 444, which made a distinction between misdemeanor and felony escapes. To the extent that *Franks* can be read to require a contrary result, it is hereby overruled in light of our foregoing analysis. Accordingly, for all of the foregoing reasons, we conclude that the trial court did not abuse its discretion in refusing to instruct on first degree manslaughter based on a misdemeanor escape from lawful custody under the facts of this case.

Appellant next asserts that the trial court issued confusing instructions upon the defense of insanity. The instructions given by the trial court were consistent with this Court's summary of the law concerning this issue as set forth in *Ballou v. State,* 694 P.2d 949, 951 (Okl.Cr.1985). This Court has previously rejected an almost identical argument. *See Brewer v. State,* 718 P.2d 354, 360–61 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986). This assignment of error is without merit.

## IV.

In his fourth assignment of error, the appellant urges that his sixth and fourteenth amendment rights were violated by the admission of other crime evidence. In short, appellant complains that the trial court erred in admitting evidence concerning the following: (1) appellant's shooting at Trooper Nichols after the shooting of Trooper Bench during a search to capture appellant; (2) appellant's lack of remorse and continued hostility toward law enforcement officers as evidenced by the conversa-

tion with Kim Hudson; (3) weapons seized following appellant's arrest; (4) fingerprint cards showing appellant's fingerprints on the Subaru and Bench's fingerprints on the OHP cruiser; and (5) a lead core taken from the victim's skull. We cannot say that the trial court abused its discretion in admitting the foregoing evidence under the exceptions set forth in 12 O.S.1981, § 2404(B), nor do we find a violation of *Burks v. State,* 594 P.2d 771, 774–75 (Okl. Cr.1979). Moreover, the voluntary statements made by the appellant to the news woman, who was a private citizen, are not protected by the exclusionary rule. *See McCubbin v. State,* 675 P.2d 461, 465 (Okl. Cr.1984). Insofar as trial counsel elicited testimony concerning the weapons seized during appellant's arrest, the objectionable evidence was cumulative and we cannot say that it was verdict determinative on this record. *See Mahorney v. State,* 664 P.2d 1042, 1046 (Okl.Cr.1983). Nor can we say that the appellant was unfairly prejudiced by the admission of the fingerprint card. The transcript shows that appellant's objection to State's Exhibit No. 56A–Q was sustained, and that there was no objection to the admission of No. 56R–W which was identified as the appellant's fingerprints. Appellant has failed to demonstrate error in the admission of the challenged evidence, or that he was unfairly prejudiced under 12 O.S.1981, § 2403. This assignment of error is without merit.

### V.

In his fifth assignment of error, appellant contends that reversible error occurred because State's Exhibit No. 73, a videotape of the appellant's response to a news reporter's question of whether appellant said "he would shoot the next trooper who stopped him on a traffic citation?," was either lost or destroyed. We must reject this assignment for the reasons previously stated in Part I relating to the motion for a change of venue.

### VI.

In his final assignment of error, appellant urges that the trial court commit-

ted fundamental error in overruling trial counsel's challenge for cause of venireman Dennis McKee. With regard to challenges for cause, the qualification of a juror is a question within the sound discretion of the trial judge. *Bass v. State,* 733 P.2d 1340, 1341 (Okl.Cr.1987). Because McKee stated that his acquaintance with the victim's family would not affect his ability to be fair and impartial and that he believed in the presumption of innocence, we cannot say that the trial court abused its discretion in refusing to excuse him for cause. *Id.* Moreover, trial counsel removed venireman McKee with a peremptory challenge. There is no indication in the record that the appellant was forced to keep an unacceptable juror, thereby reducing appellant's number of peremptory challenges to his prejudice. *See Hawkins v. State,* 717 P.2d 1156, 1158 (Okl.Cr.1986). Accordingly, this assignment of error is without merit.

Therefore, for all of the foregoing reasons, the judgment and sentence is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.

### OPINION ON REHEARING

Charles Enoch Brown was convicted of First Degree Murder in Creek County District Court, Case No. CRF–83–288, and sentenced to life imprisonment. The judgment and sentence was affirmed on direct appeal, and he has petitioned this Court for rehearing.

In his petition for rehearing, petitioner urges that recent decisions by the Tenth Circuit Court of Appeals mandate that the trial court committed reversible error in denying the petitioner's request for funds to hire an independent private psychiatrist to assist in his defense. Petitioner primarily relies upon *United States v. Crews,* 781 F.2d 826 (10th Cir.1986), which relied upon *United States v. Sloan,* 776 F.2d 926 (10th Cir.1985). We find that these cases are not applicable here, because our review of the record convinces us that, when the defendant presented his motion to the trial court, he failed to make an *ex parte* threshold

showing to the trial court that his sanity was likely to be a significant factor in his defense as required by *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). It is only "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, [that] the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1097. We cannot say that the bald assertions which appear in the motion for funds for a psychiatrist (O.R. 103–04), and argued to the trial court prior to trial (Tr. 5–6), were sufficient to undergird the allegations with evidentiary support and particularized facts showing that the petitioner's sanity at the time of the offense was seriously in question. *See Cartwright v. Maynard,* 802 F.2d 1203, 1211–12 (10th Cir.1986). Accordingly, we find that the petition for rehearing shall be DENIED.

IT IS SO ORDERED.