**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHARLES ENOCH BROWN,

　　　　Petitioner-Appellee,

v.

RONALD J. CHAMPION;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

　　　　Respondents-Appellants.

No. 97-5230
(D.C. No. 93-CV-609-K)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY, McKAY,** and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore

ordered submitted without oral argument.

---

*　　This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellants Ronald J. Champion and the Attorney General of the State of Oklahoma appeal the district court's grant of petitioner Charles Enoch Brown's 28 U.S.C. § 2254 habeas petition. Brown was convicted in 1984 of first degree murder and sentenced to life imprisonment. In granting Brown's habeas petition, the district court held that the state trial court violated Brown's due process rights by denying his pretrial motions for funds to hire a psychiatrist to assist in his insanity defense, and that such error was not harmless. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. State Court Proceedings.

### A. <u>The Trial</u>.

On October 5, 1983, Brown was stopped for a traffic violation by Oklahoma Highway Patrol Trooper Leon Bench. During the traffic stop, Brown retrieved a gun from the back of his truck, shot and killed Trooper Bench. <u>See</u> <u>Brown v. State</u>, 743 P.2d 133, 135 (Okla. Crim. App. 1987). After Brown was arrested, the state trial court ordered a competency examination and trial. During the competency trial, state psychologist Dr. Jane Ruedi testified that Brown was mentally ill and not competent to stand trial. <u>See</u> R., Comp. Tr. at 135-36. However, state psychiatrist Dr. Mason Robison testified that Brown was competent, and the jury found Brown competent to stand trial.

-2-

At trial, Brown asserted the insanity defense and self-defense. Brown, who was indigent, twice requested the trial court to provide funds for an independent psychiatrist to assist in his defense. The trial court refused. At trial, Dr. Ruedi testified for the defense. Dr. Ruedi testified that defendant had an IQ of 82, was paranoid with feelings of persecution, believed that state agencies had machines that were capable of reading his mind and communicating to him, and believed that the police were trying to stop him from getting a job or making economic gain. See R., Trial Tr., Vol. 7 at 1224-29. She testified that Brown's paranoia in areas including governmental agencies and law enforcement might interfere with his conception of reality and "that his perception of the right action might be influenced by his delusional system." See id. at 1247, 1234-35. Dr. Ruedi testified, however, that she had only examined Brown for competency purposes and had not examined Brown to determine whether he was sane at the time he committed the offense. See id. at 1247. She testified that she was "not used to assessing the ability to determine right from wrong." Id. at 1233.

Dr. Robison testified for the state. Dr. Robison agreed with Dr. Ruedi that Brown suffered from psychotic paranoia and heard machine-like voices in his mind, but he testified that such auditory hallucinations are not unusual or necessarily very serious aspects of paranoia. See id., Vol. 8, at 1414-15. Although Dr. Robison testified that Brown's paranoia might interfere with his

-3-

day-to-day interaction with other people, see id. at 1423, and probably had some effect on his actions with respect to the shooting of Trooper Bench, see id. at 1437, he also testified that Brown's paranoia was mild, see id. at 1415, and that at the time of the offense Brown "knew what he was doing and that the shooting, whether or not a person was hit by it, was an illegal act," id. at 1420. The jury did not accept Brown's insanity defense or his assertion of self-defense, and he was convicted of first degree murder and sentenced to life imprisonment.

## B. The Direct Appeal.

On direct appeal, Brown argued that the trial court had erred in denying him funds to obtain an independent psychiatrist to assist with his insanity defense. During the pendency of Brown's appeal, the Supreme Court decided Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, the Court held that when an indigent criminal defendant "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial," due process requires the state to provide "access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id., at 83. The Court explained that "without the assistance of a psychiatrist to conduct a professional examination on issues relevant to the defense, to help determine whether the insanity defense is viable, to present testimony, and to assist in preparing the cross-examination of a State's

-4-

psychiatric witnesses, the risk of an inaccurate resolution of sanity issues is extremely high." Id. at 82.

The Oklahoma Court of Criminal Appeals affirmed Brown's conviction, concluding that Brown was not deprived of the "basic tools of an adequate defense consistent with Ake" because he had access to Drs. Ruedi and Robison at trial and because insanity was not his sole defense. Brown, 743 P.2d at 137. Brown filed a petition for rehearing, arguing that the availability of government experts did not satisfy the court's duty under Ake to provide funds to hire an independent expert psychiatrist, citing United States v. Crews, 781 F.2d 826, 834 (10th Cir. 1986). The Oklahoma Court of Criminal Appeals denied the petition, concluding that Ake and Crews were inapplicable because Brown had failed to make the threshold showing that his sanity was likely to be a significant factor in his defense. See Brown, 743 P.2d at 139-40.

## II. District Court Habeas Proceedings.

Brown filed his 28 U.S.C. § 2254 habeas petition in July 1993, asserting that his Sixth and Fourteenth Amendment rights were violated by the state trial court's failure to provide him with funds for an independent psychiatrist to assist

in his defense. [2] The district court adopted the magistrate judge's recommendation and conditionally granted Brown's writ of habeas corpus.

Relying upon Ake, the district court ruled that the state trial court deprived Brown of due process by denying his motions for funds to hire an independent psychiatrist. In reaching this conclusion, the district court first determined that Brown could have made a threshold showing under Ake that his sanity at the time of the offense would be a significant factor at trial. See Castro v. Oklahoma, 71 F.3d 1502, 1513 (10th Cir. 1995) (holding that where Ake was decided after trial but while direct appeal was pending, as was the case here, the proper inquiry is whether, upon review of the entire record, the habeas petitioner "could have made a threshold showing under Ake that his sanity at the time of the offense is to be a significant factor at trial. . . ." (quotation omitted)). The district court noted that the trial court had sufficient concerns about Brown's mental state to hold a competency hearing, that defense counsel made clear that the question of Brown's sanity was central to his defense, and that defense counsel twice requested funds to hire an independent psychiatrist. The district court also concluded that the

---

[2] Section 2254 was amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 after Brown filed his petition for a writ of habeas corpus. Because the statute was passed after Brown filed his petition, the amendments do not apply here. See Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997).

testimony of Brown and the mental health professionals at trial supported the conclusion that Brown's mental health was a significant issue at trial.

The district court further held that the Ake error was not harmless. The district court pointed out that the state was required to prove beyond a reasonable doubt that Brown had the deliberate intent to take another person's life, see 21 Okla Stat. § 701.7(A), yet Brown's defense at trial was that he was not guilty because his mental illness prevented him from forming the requisite intent. The district court rejected the state's argument that the error was harmless because Brown could have elicited testimony from Dr. Ruedi concerning Brown's ability to form the requisite intent. The district court held that the trial court's refusal to provide Brown independent psychiatric assistance prevented him from developing relevant information concerning his mental health at the time of the offense, which had a direct bearing on an essential element of the crime. Because the trial court's error had denied Brown the ability to present an effective defense, the district court held the error was not harmless.

The district court conditionally granted Brown's habeas petition, ordering Brown to be released from custody unless the state granted him a new trial within 120 days from the date of its order. The state then filed this appeal.

### III.  Analysis.

The state does not dispute the district court's conclusion that Brown could have made a threshold showing under Ake that his sanity at the time of the offense would be a significant factor at trial, nor does it dispute the district court's conclusion that the state trial court deprived Brown of due process by denying him funds to hire an independent psychiatrist as required by Ake.  Rather, the state argues the district court erred in holding the error was not harmless.

Respect for the finality of a presumptively valid state-court conviction and sentence dictates that a federal court may not grant habeas corpus relief on the basis of trial error of constitutional dimension unless the court is convinced that "the error 'had substantial and injurious effect or influence in determining the jury's verdict'"  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)), or, at a minimum, entertains grave doubt that it had such an effect,       see O'Neal v. McAninch, 513 U.S. 432, 437 (1995) (holding that when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error," the court must resolve that doubt in favor of the habeas petitioner).       We have held that a trial court's erroneous denial of a psychiatric expert as required by Ake is subject to a harmless error review, applying the Kotteakos harmless-error standard.  See Brewer v. Reynolds, 51 F.3d 1519, 1529 (10th Cir. 1995).

A. <u>Review of Incomplete Record  </u>.

The state first argues that the district court's harmless error analysis was flawed because it failed to review the entire state record. The record before the magistrate judge and district court consisted of the competency trial transcripts and those portions of the criminal trial transcripts in which Brown requested funds to hire a psychiatrist, and in which Brown, and Drs. Ruedi and Robison, testified. <u>See</u> R., Doc. 36 at 4 n.2. However, the state did not include the entire state criminal trial transcripts in the record before the district court. <u>See id.</u>, Doc. 18 at 2. Both the magistrate judge's report and the district court's order detailed the portions of the record they had reviewed, putting the state on notice that they did not have, and did not review, the entire state court record. <u>See</u> R., Doc. 36 at 4 n.2; Doc. 33 at 8. Despite this knowledge, the state did not raise the incomplete record issue in its objections to the magistrate judge's report and recommendation. Nevertheless, it argues that once the district court determined that the state trial court had erred in denying Brown's request for expert funds, it should have ordered supplementation of the record to include the entire state court criminal trial transcripts in order to conduct a harmless error analysis.

Brown responds that the state waived the right to challenge the district court's incomplete record review because it failed to raise this issue in its objections to the magistrate judge's report and recommendation. "It is settled

Tenth Circuit law that when a party fails to object to the magistrate's findings and recommendations within the appropriate time, he or she waives the right to appellate review." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996).

The state concedes that it failed to object to the lack of a complete record, but argues the district court's failure to review the complete record amounts to plain error, and contends that the interests of justice dictate that the waiver rule should not be applied. See Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991) (the waiver rule "need not be applied when the interests of justice so dictate"). The state has made resolution of this issue easier, however, because it has moved to supplement the record on appeal with the complete state court record, and requests that this court conduct its own harmless error analysis based on a review of the entire state record. The state does not argue that the district court's failure to review the entire record requires that we remand this case to the district court for reconsideration of its harmless error analysis, nor do we conclude such a remand is necessary.

It is well settled that reviewing courts must evaluate a trial error in the context of the entire trial record when determining whether the error was harmless. See, e.g., United States v. Hasting, 461 U.S. 499, 509 & n.7 (1983); Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir.), cert. denied, 67 U.S.L.W.

-10-

3270 (1998). It is also well settled that in order to review the district court's harmless error determination, this court must make a *de novo* examination of the trial record. See United States v. Tome, 61 F.3d 1446, 1455 (10th Cir. 1995). Accordingly, we grant the state's request to supplement the record on appeal. Having now undertaken our own *de novo* review of the entire state criminal record, we conclude, for the reasons set forth below, that the state trial court's error in refusing to allow Brown funds to hire an independent psychiatrist was not harmless. Thus, assuming *arguendo* that the district court erred in failing to obtain and review the entire record, the result in this case would be no different.

### B. Severity of Brown's Condition.

The state next contends the trial court's failure to provide Brown with a psychiatric defense expert was harmless error because Brown's mental condition, paranoia, was not a complex condition beyond the jury's understanding. Relying on portions of Dr. Robison's testimony, the state argues Brown's paranoia was mild and characteristic of his shy, suspicious personality, which, the state contends, are common feelings within the jury's everyday experience. Further, the state contends that because Brown testified at trial, the jury was able to evaluate for itself the severity of Brown's mental condition at the time of the offense by observing his demeanor at trial and his recitation of the facts of the crime. The state also argues that Brown's paranoia could not have affected his

judgment at the time of the offense because Brown testified he wasn't hearing any voices or experiencing any visual hallucinations at the time of the offense.

The state's assertion that    Brown's paranoia was "mild" begs the question of whether Brown was sane at the time of the offense.  The only statement that Brown's paranoia was mild comes from the state's expert, whose opinion was not challenged by an independent defense expert.  Further, we are not satisfied from our review of the record that the state's characterization of Brown's paranoia as "mild" is a fair characterization of the evidence of Brown's mental illness. Dr. Robison, the state's expert, testified that Brown was of borderline intellectual functioning, that he had a major mental illness and could be characterized as a psychotic paranoid and that Brown's competency to stand trial was only marginal. See R., Comp. Tr. at 285-86, 289, 284.  Dr. Ruedi testified for the defense that Brown was mentally ill, in need of treatment and not competent to stand trial. See id. at 135-36.  Dr. Ruedi and Dr. Robison both testified that Brown had a low IQ, experienced auditory hallucinations and believed that state agencies were able to read his mind with machines and to communicate to him through the air. Dr. Ruedi testified that Brown believed there had been efforts by governmental bodies, including the police, to persecute him and prevent him from achieving economic gain.   Dr. Ruedi testified at trial that Brown's paranoid beliefs about

governmental bodies might interfere with his conception of reality and his perception of right and wrong.    See R., Trial Tr., Vol. 7 at 1229-30.

We cannot accept the state's assertion that Brown's paranoid and delusional beliefs are common feelings within a jury's everyday experiences.  Given the clear evidence in the record that Brown suffered some degree of significant mental impairment, we are not persuaded that a lay jury could evaluate the severity of Brown's mental condition and make a determination of whether he was sane at the time of the offense without assistance from expert psychiatrists.  Nor can we accept the state's assumption that Brown's own recollection of not having any visual or auditory hallucinations at the time of the offense is dispositive of whether he was sane at the time of the offense.

Moreover, the state's contention that the jury could fairly evaluate Brown's mental status without testimony from an independent psychiatrist for the defense evinces a fundamental misunderstanding of the Supreme Court's statement       that psychiatric assistance can be "crucial and a virtual necessity if an insanity plea is to have any chance of success."    Ake, 470 U.S. at 81 (quotation omitted).  The Court explained:

> [P]sychiatrists gather facts, through professional examination
> . . . that they will share with the judge or jury; they analyze the
> information gathered and from it draw plausible conclusions about
> the defendant's mental condition, and about the effects of any
> disorder on behavior; and they offer opinions about how the
> defendant's mental condition might have affected his behavior at the

-13-

time in question. . . . Through this process of investigation, interpretation, and testimony, <u>psychiatrists ideally assist lay jurors, who generally have no training in psychiatric matters, to make a sensible and educated determination about the mental condition of the defendant at the time of the offense</u>.

<u>Id.</u>, at 80-81 (emphasis added).

### C. <u>Brown's Primary Defense</u>.

The state next argues that the <u>Ake</u> error was harmless because Brown's "true defense" was self-defense, not insanity. Brown testified at trial that he shot at Trooper Bench only because the trooper first began shooting at him, testifying that the trooper shot at him from inside his patrol car, through its front windshield. The evidence showed that Trooper Bench never discharged his weapon. The state argues that the lack of physical evidence supporting Brown's claim that he shot in self-defense demonstrates that Brown had the requisite intent to commit first degree murder, and that any error with respect to his sanity defense was, therefore, harmless.

Again, the state's argument essentially begs the question of whether Brown was sane at the time of the offense. One could reasonably infer from the evidence that Brown's paranoid and delusional thoughts concerning law enforcement interfered with his ability to understand events such that he was under a delusional belief at the time of the offense that the trooper was firing at him. A psychiatric expert for the defense could have given the jury important insight into

-14-

whether Brown's belief that Trooper Bench was shooting at him was actually a product of his paranoid delusions. Moreover, while the state now argues Brown's "true defense" was self-defense, it asserted at trial that Brown's "only defense" was his statement that he "heard machines." R., Trial Tr., Vol 7. at 1357.

### D. No Need for Defense Expert.

Finally, the state argues that because the jury heard expert testimony regarding Brown's mental status from Dr. Ruedi and Dr. Robison, the Ake error was harmless because a third expert would have been "more than likely redundant." Appellant's Br. at 18. We cannot agree.

First, these two experts, while in accord that Brown suffered from psychotic paranoia, had different opinions about the severity of his illness and whether Brown was even competent to stand trial. Thus, an independent psychiatrist testifying for the defense could not have been merely redundant of the expert testimony at trial. Further, the only expert available to Brown, Dr. Ruedi, lacked the qualifications with respect to an insanity defense possessed by the state's expert, Dr. Robison. Dr. Robison was a psychiatrist with extensive expertise in evaluating persons in connection with an insanity defense, and he evaluated, and gave his opinion concerning, Brown's sanity at the time of the offense. In contrast, without funds to hire his own expert, Brown was only able to present the testimony of Dr. Ruedi, who was not a psychiatrist, but a

-15-

psychologist, and lacked any experience in evaluating sanity. Because she lacked

the expertise, Dr. Ruedi did not evaluate Brown on the issue critical to his sanity

defense: whether Brown was able to know right from wrong at the time of his

offense. See id. at 1247. Indeed, the state challenged Dr. Ruedi's testimony at

trial because she lacked a medical degree or a degree in clinical psychology. See

id. at 1267.

Second, a psychiatric defense expert would not have been merely

redundant, as the state contends, because Brown had no expert to assist his

attorney prepare a defense. Ake teaches, as we have recognized before, that an

independent psychiatrist is needed not just to examine and present an opinion

regarding a defendant's sanity, but also to help the defendant's attorney in

preparing a defense and an effective cross-examination of the state's psychiatric

witnesses. See 470 U.S. at 82; Crews, 781 F.2d at 834 (holding that, despite the

testimony of four treating or court-appointed psychiatrists, defendant was still

entitled under Ake to the appointment of a psychiatrist to assist in his defense).

An independent psychiatrist assisting Brown with his insanity defense would

"know the probative questions to ask of the opposing party's psychiatrists and

how to interpret their answers," Ake, 470 U.S. at 80. Dr. Ruedi was a state

employee, supervised by Dr. Robison, and might well have felt understandably

-16-

constrained both in her ability to assist in the preparation of Brown's defense and in her ability to challenge Dr. Robison's opinion.

In short, we agree with the district court that denying Brown an opportunity to present any independent expert psychiatric testimony precluded him from developing and presenting relevant information concerning his mental health at the time of the offense, and denied him any meaningful ability to rebut the state's evidence that he was sane at the time of the offense. Thus, we conclude that the state trial court's failure to provide Brown with funds for an independent psychiatrist to conduct an appropriate examination and to assist in the evaluation, preparation, and presentation of his defense had a substantial and injurious effect and influence in determining the jury's verdict.

The state's motion to supplement the record is GRANTED. The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


Wade Brorby
Circuit Judge


-17-