Filed 9/11/23  P. v. Madrigal CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JULIO CESAR MADRIGAL,<br><br>    Defendant and Appellant. | F084614<br><br>(Super. Ct. No. PCF413779A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs and Carly Orozco, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

K.G. and Jonathan Ramirez were stopped in a black vehicle on the side of the road waiting to pick up marijuana when a light blue vehicle pulled up next to them.  Defendant Julio Cesar Madrigal and Jose Barraza got out of the light blue vehicle and confronted

Ramirez about five pounds of missing marijuana. When K.G. and Ramirez said they did not know about the missing "weed," Barraza told defendant to take K.G. into their blue vehicle and that Barraza would take Ramirez. Defendant opened K.G.'s door and tried to drag K.G. out of the vehicle. Ramirez struck defendant who then shot Ramirez in the head, killing him.

Before trial, defendant pleaded no contest to two counts of being a felon in possession of a firearm and one count of possession of ammunition and admitted related allegations. A jury convicted defendant of first degree murder and kidnapping and found true the related allegations. The court sentenced defendant to an aggregate prison term of 97 years to life with the possibility of parole.

On appeal, defendant claims the trial court erred when it did not require juror unanimity as to the underlying theory for the first degree murder conviction, and the prosecutor committed prejudicial misconduct by misstating the law during closing argument. We reject defendant's claims and affirm the judgment.

**FACTUAL BACKGROUND**

On May 21, 2021, K.G. and her boyfriend Ramirez were sitting in a black vehicle, stopped on the side of the road, waiting to pick up some marijuana. K.G. was sitting in the driver's seat and Ramirez was sitting in the front passenger seat. While they were waiting, a "gray-blueish" vehicle pulled up and stopped next to them at the driver's side of the black vehicle. Defendant, who was seated in the front passenger seat of the blueish vehicle, and Barraza, the driver, got out of their vehicle and defendant knocked on K.G.'s window while Barraza knocked on Ramirez's window. Ramirez rolled down his window about eight inches. Barraza put his arms on the window and asked where his girlfriend's five pounds of weed were. K.G. and Ramirez said they did not know what Barraza was talking about. Barraza thought they were lying and became upset. Barraza told defendant to separate them and take K.G. in the gray-blueish vehicle and that Barraza would take Ramirez in the black vehicle.

2.

K.G. was still sitting in the driver's seat when defendant said to her, "'Are you just going to ignore me and not roll down your window?'" K.G. was scared but lowered her window. Defendant then unlocked K.G.'s door and opened it. The vehicle was not in park at the time and so K.G. stepped on the gas pedal, but defendant was able to slide into the vehicle and step on the brake. Defendant positioned half his body on K.G., with his foot on the brake, while trying to pull K.G. out of the vehicle. K.G. was afraid and did not want defendant in the vehicle. While K.G. fought with defendant, Ramirez struck defendant, who became "discombobulated." Defendant lifted himself off K.G., placed his left arm over K.G.'s left arm and fired the gun. K.G. heard the gunshot but did not see the gun and did not know where the gun came from.

After the shooting, Barraza and defendant got in the gray-blueish vehicle and left. K.G. turned to Ramirez and panicked when she saw him; she got out of the vehicle, dropped to the ground, and started yelling. Ramirez was not responsive; his eyes were closed and he appeared to have a gunshot wound to his forehead. There was a lot of blood streaming and gushing everywhere. K.G. said she "snapp[ed] out of it" and got back in the vehicle and drove Ramirez to the hospital. While driving, K.G. noticed blood kept spilling out of Ramirez; there was blood coming out from the back of his head like the bullet went through.

K.G. knew defendant for about a year and Barraza for a few years. K.G. denied having an intimate relationship with either defendant or Barraza. K.G. did not initially tell the police she knew defendant or Barraza because she had a six-year-old daughter and was afraid they would come for her. However, after Ramirez was pronounced dead from the gunshot wound to the head, K.G. gave the police their names because she was afraid for her life. K.G. admitted to law enforcement she was under the influence of marijuana and methamphetamine during the incident. Law enforcement discovered 14.432 ounces of marijuana in the black vehicle and possibly some heroin in the bottom of a soda can.

K.G. said she was unaware of how much marijuana or heroin was in the vehicle. K.G. had gold hoop earrings in the vehicle and said there was no gun in the vehicle.

Prior to this incident, K.G. had been in a fight with defendant where she pushed defendant, and he attacked her by punching her several times until she blacked out. After the fight, K.G. told defendant, "'You're going to pay for this.'" K.G. stated this was not why she was testifying in court, and she did not actually want to be testifying in court.

Lead detective Corporal Matt Muller found a cell phone, one gold hoop earring, and a spent nine millimeter shell casing at the scene of the incident. Samples were taken from K.G. for gunshot residue on both her hands but Muller chose not to run the tests because it was undisputed it would show the presence of gunshot residue. Muller interviewed K.G. and described her as crying, angry, and sad. After interviewing K.G., Muller did not consider her to be a suspect. K.G. positively identified defendant as the shooter and Barraza as the second person from a six-pack photographic lineup.

After weeks of attempting to find defendant, Muller's team located and arrested defendant. With a search warrant for the unit where defendant was staying, law enforcement collected a loaded nine millimeter handgun inside a pair of Nike shoes. Defendant's fingerprints were found on the exterior driver-side door of the black vehicle driven by K.G., and Barraza's fingerprints were located on the front passenger door window. The cartridge casing and bullet fragments obtained from the scene of the shooting were not fired from the nine millimeter gun retrieved from the Nike shoe.

Defendant was charged with murder (Pen. Code, § 187, subd. (a); count 1), kidnapping (§ 207, subd. (a); count 2), being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 3 & 5) and possession of ammunition (§ 30305, subd. (a)(1); count 4). It was alleged defendant personally and intentionally discharged a firearm causing great bodily injury and death in count 1 (§ 12022.53, subds. (b)–(d)), causing the offense to become a serious and violent felony (§§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8)). In count 2, it was alleged defendant kidnapped the victim while armed with a firearm

4.

(§ 12022, subd. (a)(1)), which was used (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)(1)) and caused the offense to become a serious and violent felony (§§ 1192.7, subd. (c)(8), 667.5, subd. (c)(8)). It was further alleged defendant committed the offenses while on parole (§ 1203.085, subd. (a)) and had suffered a prior serious or violent felony conviction (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)).

Before trial, defendant pled no contest to counts 3, 4 and 5 and admitted all related special allegations. The jury convicted defendant of count 1, first degree murder, and count 2, kidnapping, and found true all related special allegations. Defendant was sentenced to an aggregate term of 97 years to life, comprising 55 years to life with the possibility of parole for murder, an additional 25 years to life for discharging a firearm causing death, 10 years for kidnapping, 16 months each for counts 3, 4 and 5, and three years for personally using a firearm during the kidnapping.

## DISCUSSION

### I. The Trial Court Did Not Err by Permitting the Jury to Find Defendant Guilty of First Degree Murder Without Requiring Unanimity of the Underlying Theory

Defendant first contends the trial court violated his right to a jury trial by failing to instruct the jury it must unanimously agree on a theory of first degree murder. The People disagree, stating the California Supreme Court's long-established precedent makes it clear unanimity is only required as to the statutory definition of murder, not to the underlying theory. We agree with the People and reject defendant's claim.

#### A. Relevant Procedural History

The trial court instructed the jury on the prosecutor's two theories of murder as follows: "The defendant has been prosecuted for murder under multiple theories. [¶] Each theory of murder has different requirements, and I will instruct you on each. [¶] You may not find the defendant guilty of murder unless all of you agree that the

5.

People have proved that the defendant committed murder.  You need not all agree on the same theory but you must unanimously agree on the degree of murder."

The prosecutor presented two theories of first degree murder at trial:  (1) defendant committed deliberate, premeditated, and willful murder; and (2) defendant committed felony murder in the course of kidnapping K.G. and Ramirez.  The jurors were instructed on both possible theories.  The jury convicted defendant of kidnapping and first degree murder.

### B.      Standard of Review and Applicable Law

We review de novo claims of instructional error.  (See *People v. Myles* (2023) 89 Cal.App.5th 711, 728.)  "The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law [citations] and also whether instructions effectively direct a finding adverse to a defendant by removing an issue from the jury's consideration."  (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

In prosecutions for first degree murder, the California Supreme Court has consistently held it is not necessary for all jurors to agree on one or more of several theories of murder proposed by the prosecution; it is sufficient each juror is convinced beyond a reasonable doubt the defendant is guilty of first degree murder as the offense is defined by the statute.  (*People v. Milan* (1973) 9 Cal.3d 185, 194–195; *People v. Nye* (1965) 63 Cal.2d 166, 173; *People v. Chavez* (1951) 37 Cal.2d 656, 670–672 [not necessary that jurors agree on underlying theory of murder]; see *People v. Visciotti* (1992) 2 Cal.4th 1, 61, fn. 31 [jury unanimity on the theory of first degree murder was not required]; *People v. Nicholas* (1980) 112 Cal.App.3d 249, 273 [same].)

### C.      Analysis

Defendant argues his murder conviction violates his Sixth Amendment right to a jury trial because the jurors were not given a unanimity instruction for the theories of first degree murder.  Defendant argues "the facts which the state was required to prove for a

premeditated murder conviction were very different from the facts the state had to prove to convict him under a felony murder theory." Defendant concedes *Schad v. Arizona* (1991) 501 U.S. 624, 645 (*Schad*) held the Sixth Amendment does not require the state to treat different factual theories as elements of an offense, and California has rejected the notion unanimity instructions pertaining to distinct theories of murder are required. However, defendant argues this court is no longer bound by *Schad* after *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and *Ring v. Arizona* (2002) 536 U.S. 584 (*Ring*).

Defendant is entitled to a unanimous verdict from the jury. (Cal. Const., art. I, § 16; *People v. Nicholas*, *supra*, 112 Cal.App.3d at p. 272; *People v. Collins* (1976) 17 Cal.3d 687, 693, superseded by statute on another ground as stated in *People v. Boyette* (2002) 29 Cal.4th 381, 462, fn. 19.) Penal Code section 187, subdivision (a) defines "murder" as "the unlawful killing of a human being … with malice aforethought." Section 189, subdivision (a) categorizes those killings constituting murder in the first degree: "All murder that is perpetrated by means of … any … kind of willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate … [a listed felony, i.e., the felony-murder rule] is murder of the first degree." Here, the jury unanimously decided defendant was guilty of first degree murder. "'Felony murder and premeditated murder are not distinct crimes'" but alternate theories of first degree murder. (*People v. Moore* (2011) 51 Cal.4th 386, 413; see *People v. Kipp* (2001) 26 Cal.4th 1100, 1131.)

Under a long-standing rule in California, a jury need not agree on the specific theory by which a unanimous verdict is reached. (See *People v. Milan*, *supra*, 9 Cal.3d at pp. 194–195; *People v. Nye*, *supra*, 63 Cal.2d at p. 173; *People v. Chavez*, *supra*, 37 Cal.2d at pp. 670–672; *People v. Hardenbrook* (1957) 48 Cal.2d 345, 353–354.) In *Milan*, our Supreme Court rejected a complaint like the claim defendant raises here. (*Milan*, *supra*, at pp. 194–195.) According to *Milan*, "in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories

7.

proposed by the prosecution." (*Id.* at p. 195.) Some jurors may find the murder occurred during the course of a felony, while others may find it was deliberate and premeditated. The court held it was sufficient that each juror was convinced beyond a reasonable doubt the defendant was guilty of first degree murder as defined by statute. (*Ibid.*)

In *People v. Nicholas*, *supra*, 112 Cal.App.3d at page 272, the defendant complained the verdict was not unanimous as to either of the two theories on which he was found guilty. He argued some of the jurors convicted him based on a "'willful, deliberate and premeditated'" murder, while others convicted him under the felony-murder rule. (*Ibid.*) The court cited *Milan* and rejected his claim. (*Nicholas*, at p. 273.) Here, like in *Milan* and *Nicholas*, defendant complains his verdict could have been based on one of two theories: (1) premeditated murder or (2) felony murder. However, as *Milan* held, defendant may be convicted of murder in the first degree without unanimity of agreement on the theories advanced by the prosecution. (See *People v. Milan*, *supra*, 9 Cal.3d at p. 195.)

The United States Supreme Court in *Schad* affirmed the states did not need to require unanimity of theory for first degree murder. The *Schad* court considered a series of state court decisions, agreeing "'it was not necessary that all the jurors should agree in the determination that there was a deliberate and premeditated design to take the life of the deceased, or in the conclusion that the defendant was at the time engaged in the commission of a felony, or an attempt to commit one; it was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime of murder in the first degree as that offense is defined by the statute.'" (*Schad*, *supra*, 501 U.S. at p. 641, quoting *People v. Sullivan* (1903) 173 N.Y. 122, 127; see *People v. Milan*, *supra*, 9 Cal.3d at p. 195; *People v. Travis* (1988) 170 Ill.App.3d 873, 890–891; *State v. Fuhrmann* (Iowa 1977) 257 N.W.2d 619, 623–624; *State v. Wilson* (1976) 220 Kan. 341, 344–345; *Commonwealth v. Devlin* (1957) 335 Mass. 555, 565–566; *People v. Embree* (1976) 70 Mich.App. 382, 384; *State v. Buckman* (1991) 237 Neb. 936, 940–942; *James*

*v. State* (Okla.Crim.App. 1981) 637 P.2d 862, 865–866, overruled in part on other grounds in *Brown v. State* (Okla.Crim.App. 1987) 743 P.2d 133; *State v. Tillman* (Utah 1987) 750 P.2d 546, 563–564.) The *Schad* court recognized not all state courts have been unanimous in this respect (see *State v. Murray* (1989) 308 Ore. 496), but found there was "sufficiently widespread acceptance of the two mental states as alternative means of satisfying the *mens rea* element of the single crime of first-degree murder to persuade [it] that Arizona [had] not departed from the norm." (*Schad*, *supra*, at p. 642.) *Schad* concluded the Constitution does not require unanimity of alternate theories of murder. (*Schad*, at p. 645.)

Defendant recognizes the California Supreme Court "has rejected the argument that jurors must be instructed to unanimously agree on a theory of murder, sometimes citing *Schad*." He also concedes that "if the *Schad* plurality is still good law, there is no constitutional infirmity with these instructions." However, defendant contends *Schad* is no longer the law after the high court's *Apprendi* and *Ring* decisions. We disagree.

We begin with *Walton v. Arizona* (1990) 497 U.S. 639, where the United States Supreme Court held Arizona's sentencing scheme was compatible with the Sixth Amendment because the additional facts found by the judge qualified as sentencing considerations, not as "element[s] of the offense of capital murder." (*Walton*, at p. 649; see *Ring*, *supra*, 536 U.S. at p. 588.) Ten years later, the court in *Apprendi* held the Sixth Amendment does not permit a defendant to be "expose[d] … to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." (*Apprendi*, *supra*, 530 U.S. at p. 483.) This proscription governs even if the state characterizes the additional findings made by the judge as "sentencing factor[s]." (*Id.* at p. 492.) In deciding *Apprendi*, the high court stated, "[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id.* at p. 494.) Because the factual allegations at issue in *Apprendi* did indeed expose the defendant to additional

punishment, they were allegations to which the Sixth Amendment applied. (*Apprendi*, at p. 491.) Subsequently, the court in *Ring* concluded *Apprendi*'s reasoning is irreconcilable with *Walton*'s holding in this regard and overruled *Walton* in relevant part. (*Ring*, *supra*, at p. 589.) "Capital defendants, no less than noncapital defendants, … are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." (*Ibid*.)

"Following *Apprendi*, numerous cases have reaffirmed the rule that a jury need not unanimously agree whether the defendant committed premeditated murder or felony murder." (*People v. Quiroz* (2013) 215 Cal.App.4th 65, 75 [*Apprendi* has not vitiated California's authority to distinguish between alternative theories and separate crimes and to require unanimity only for separate crimes]; see *People v. Moore*, *supra*, 51 Cal.4th at p. 413; *People v. Morgan* (2007) 42 Cal.4th 593, 617 [nothing in *Apprendi* requires unanimous verdict on theory of first degree murder]; *People v. Taylor* (2010) 48 Cal.4th 574, 626 [rejecting defendant's claim a unanimity instruction is required under *Apprendi*]; *People v. Nakahara* (2003) 30 Cal.4th 705, 712–713 [nothing in *Apprendi* requires a unanimous jury verdict as to the particular theory of first degree murder].) Our Supreme Court made clear its position on unanimity post-*Apprendi* by stating, "[I]t has long been settled 'that unanimity as to the theory under which a killing is deemed culpable is not compelled as a matter of state or federal law. Each juror need only have found defendant guilty beyond a reasonable doubt of the single offense of first degree murder as defined by statute and charged in the information.'" (*Moore*, *supra*, at p. 413; see *Schad*, *supra*, 501 U.S. at pp. 630–645 (plur. opn. of Souter, J.); *id.* at pp. 648–652 (conc. opn. of Scalia, J.); see also *Taylor*, *supra*, at p. 626; *Morgan*, *supra*, at p. 617; *Nakahara*, *supra*, at pp. 712–713.) *Apprendi* "addresses the Sixth Amendment right to a jury determination of facts used in sentencing beyond the elements of the charged offenses." (*Moore*, *supra*, at p. 413.) It did not create "new notice or unanimity

requirements for alternative *theories* of a substantive offense such as first degree murder." (*Ibid.*; see *Taylor*, at p. 626; *Morgan*, at p. 617.)

Here, defendant is not challenging the finding of facts that would increase his maximum punishment for first degree murder as in *Apprendi*. Instead, like in *Moore*, defendant challenges this state's law not requiring unanimity of alternative theories of murder without offering any United States Supreme Court decision "creating new notice or unanimity requirements for alternative *theories* of a substantive offense such as first degree murder." (*People v. Moore*, *supra*, 51 Cal.4th at p. 413.) We are bound by the higher court's ruling and find no reason to part from precedent. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Even assuming a unanimity instruction on the alternative theories of first degree murder were required, any assumed error would be harmless under any standard. The jury unanimously found defendant guilty of first degree murder of Ramirez and guilty of the substantive crime of kidnapping and found true the special allegations that defendant was armed with a firearm during the commission of the kidnapping and also personally used the firearm in the commission of the kidnapping. Given these verdicts and findings, the jury necessarily reached a unanimous agreement that defendant committed first degree felony murder in the commission of the kidnapping. (See *People v. Taylor*, *supra*, 48 Cal.4th at p. 626 [any error harmless where "jury necessarily reached unanimous agreement that defendant committed a first degree felony murder based on" their unanimous agreement finding the defendant guilty of "rape, forcible oral copulation, and burglary"]; cf. *People v. Hawthorne* (2009) 46 Cal.4th 67, 89–90 [where jury found true the felony-murder special circumstance, it necessarily agreed with the first degree felony-murder theory], disapproved on another point in *People v. McKinnon* (2011) 52 Cal.4th 610, 637–643; *People v. Carpenter* (1997) 15 Cal.4th 312, 395 [where jury found defendant guilty of rape of murder victim, it unanimously agreed with a first degree felony-murder theory], overruled on other grounds in *People v. Diaz* (2015) 60 Cal.4th

1176, 1190–1191.) Consequently, if there were any instructional error it would be harmless beyond a reasonable doubt in this case. (See *Chapman v. California* (1967) 386 U.S. 18, 24.) Therefore, defendant's claim fails.

## II. The Prosecutor Did Not Commit Prejudicial Misconduct by Telling Jurors that Because the Evidence Supported an Intent to Kill Finding They Should Start Their Analysis at Second Degree Murder

Additionally, defendant argues the prosecutor committed prejudicial misconduct by telling the jurors their analysis started at second degree murder. The People state defendant forfeited this claim by failing to object at trial. The People also argue defendant's claim lacks merit because the prosecutor did not misstate the law, nor did defendant suffer prejudice. We agree with the People and reject defendant's claim.

### A. Relevant Procedural History

Before closing arguments, the court instructed the jury: "Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case, but their remarks are not evidence." The court also instructed the jury to defer to the instructions given by the court. "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions. [¶] Pay careful attention to all these instructions and consider them together." Additionally, the court instructed the burden of proof beyond a reasonable doubt was placed on the People, and the jury was required to find defendant not guilty if the People failed to meet their burden.

As to first and second degree murder, the court instructed the jury: "If you decide the defendant committed murder, it is murder in the second degree unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in the instruction. [¶] The defendant is guilty of first-degree murder if the People have proved that … he acted willfully and deliberately and with premeditation. [¶] The defendant

12.

acted willfully … if he intended to kill. [¶] The defendant acted deliberately if he carefully weighed the consideration for and against his choice and, knowing the consequences, decided to kill. [¶] The defendant acted with premeditation if he decided to kill before completing the acts that caused death." Again, the court stated: "The People have the burden of proving beyond a reasonable doubt that the killing was first-degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second-degree murder."

The court also instructed: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. The defendant killed someone because of a sudden quarrel or in the heat of passion if: [¶] One, the defendant was provoked; [¶] Two, as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; [¶] And three, that the provocation would have caused a person of average disposition to act rashly, without due deliberation, that is from passion rather than judgment."

During closing arguments, the prosecutor argued the following:

> "[Defendant] is charged in Count 1 with murder. And as the Judge instructed you, there are three types of murder. First-degree murder, second-degree murder, and voluntary manslaughter. I think the easier way to understand or to process the types of murder and how you determine which ones is to start with the second-degree murder. [¶] … [¶] So instruction 520 explains what second-degree murder is. One, the defendant committed an act that caused the death of another person; and, when the defendant acted, he had a state of mind called malice aforethought. A complicated legal term. What does that mean? The instruction further explains.

> "It can be one of two types of malice. There's express malice, unlawfully intended to kill. And then there's implied malice, which is all these other things that you could read in the instruction.

13.

"But, folks, the evidence has shown that there was an intent to kill. And I'm going to talk about that in just a minute. There is an intent to kill. This isn't a case of implied malice. This is a case of express malice. So we have caused the death of another, intent to kill. We have second-degree murder already. That's from the starting point.

"After you have second-degree murder, the next question I recommend you ask is, 'Well, does this get downgraded to voluntary manslaughter?' And the jury instruction for that is 570. And it explains that voluntary manslaughter is when the defendant was provoked; as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is from passion rather than from judgment. [¶] … [¶]

"There is no provocation. They didn't act rashly under the influence of intense emotion. And even a person of average disposition would never think that this is an excuse to kill. So, folks, there is no voluntary manslaughter. We're back to second-degree murder, and now we have another question to determine. Is it first-degree murder?"

Defendant raised no objection to this part of the prosecutor's argument.

## B.  Standard of Review

"'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.'" (*People v. Gionis* (1995) 9 Cal.4th 1196, 1215; see *People v. Price* (1991) 1 Cal.4th 324, 447; see also *People v. Rowland* (1992) 4 Cal.4th 238, 274; *People v. Morales* (2001) 25 Cal.4th 34, 44 [defendant must timely object to prosecutor's argument unless admonition from the court could not have cured any harm or the objection would have been futile]; *People v. Riel* (2000) 22 Cal.4th 1153, 1212 [objection required because an admonition could potentially cure any harm from any misconduct].)

"To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In

14.

conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; accord, *People v. Lima* (2022) 80 Cal.App.5th 468, 477–478.)

### C. Analysis

Defendant argues the prosecutor committed prejudicial misconduct by telling the jury that since the evidence supported an intent to kill, its analysis started at second degree murder. Defendant also claims it was misconduct for the prosecutor to tell the jury there was insufficient evidence to downgrade the crime to manslaughter. Defendant claims the prosecutor's argument undercut the state's burden of proof, which is to prove beyond a reasonable doubt both an unlawful killing and malice. The People argue defendant forfeited this claim by failing to object at trial. The People also argue the prosecutor did not misstate the law and defendant did not suffer prejudice. Defendant concedes he failed to object to the prosecutor's comments at trial but argues the court can consider the merits of his claim because it raises a pure question of law on undisputed facts, and the court may consider the claim to avoid habeas corpus litigation raising ineffective assistance of counsel claims.

We begin with the undisputed fact defendant failed to object to the challenged comments during the prosecutor's closing argument. The rule requiring "claims of prosecutorial misconduct be preserved for appellate review by a timely and specific objection and request for admonition is well established" and long settled. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1340; see *People v. Gionis*, *supra*, 9 Cal.4th at p. 1215; *People v. Price*, *supra*, 1 Cal.4th at p. 447; *People v. Rowland*, *supra*, 4 Cal.4th at p. 274; *People v. Morales*, *supra*, 25 Cal.4th at p. 44; *People v. Riel*, *supra*, 22 Cal.4th at p. 1212; see also *People v. Clark* (2011) 52 Cal.4th 856, 960; *People v. Wilson* (2008) 44

Cal.4th 758, 800; *People v. Cole* (2004) 33 Cal.4th 1158, 1201; *People v. Hill* (1998) 17 Cal.4th 800, 820; *People v. Fleming* (1913) 166 Cal. 357, 377 ["It is now well settled that an appellate court will not consider a claim as to the misconduct of counsel in argument unless objection is so made"].) "The reason for this rule, of course, is that 'the trial court should be given an opportunity to correct the abuse and thus, if possible, prevent by suitable instructions the harmful effect upon the minds of the jury.'" (*People v. Green* (1980) 27 Cal.3d 1, 27, overruled on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3, and *People v. Martinez* (1999) 20 Cal.4th 225, 239; accord, *Seumanu*, *supra*, at p. 1341.)

Here, defendant's claim the prosecutor misstated the law during closing argument is subject to the forfeiture doctrine because "misstatements of law are generally curable by an admonition from the court." (*People v. Centeno* (2014) 60 Cal.4th 659, 674; see *People v. Bell* (1989) 49 Cal.3d 502, 548; *People v. Rowland*, *supra*, 4 Cal.4th at p. 274 [claims of misconduct rejected on procedural grounds].) In *Rowland*, defense counsel made no objection of any kind regarding the prosecutor's conduct, and the court found no exception excused this failure since any "harm" was readily curable. (*Id*. at pp. 274–275.) Here as well, defense counsel did not object to the prosecutor's alleged misstatements of law, which, if error were found, were readily curable. (See *Centeno supra*, at p. 674; *People v. Hill*, *supra*, 17 Cal.4th at p. 820 ["A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile" or an admonition would not have cured the harm caused by the misconduct]; *People v. Arias* (1996) 13 Cal.4th 92, 159; *People v. Noguera* (1992) 4 Cal.4th 599, 638 [claims of prosecutorial misconduct in closing argument were forfeited where trial counsel failed to make any objection].) On the other hand, in *Hill*, the failure to object was excused where defense counsel's previous objections were continually overruled, and the trial court suggested defense counsel was being an obstructionist and delaying the trial with "meritless" objections. (*Hill*, *supra*, at p. 821.) Here, there is no

16.

evidence the court considered defense counsel an obstructionist or suggested counsel had been delaying the trial with meritless objections.

We reject defendant's argument that his claim should not be forfeited because it raises a pure question of law on undisputed facts. Defendant's cited authorities address dissimilar issues and do not apply to the facts of this case. In *People v. Yeoman* (2003) 31 Cal.4th 93, the defendant raised a *People v. Wheeler* (1978) 22 Cal.3d 258 objection at trial and was not prevented from raising a *Batson v. Kentucky* (1986) 476 U.S. 79 objection for the first time on appeal since "*Wheeler* and *Batson* articulate the same standard." (*Yeoman*, *supra*, at p. 117 [no useful purpose is served by declining to consider on appeal a claim that merely restates, under alternative legal principles, a claim otherwise identical to one properly preserved by a timely motion].) Therefore, "the same factual issues [were] properly before [the court] already because of defendant's timely *Wheeler* motion." (*Yeoman*, *supra*, at p. 118.) The holding under *Yeoman* does not apply here since defendant is not raising a claim otherwise identical to one that was properly preserved at trial under alternative legal principles.

In *People v. Hines* (1997) 15 Cal.4th 997, the court considered the defendant's newly raised claim challenging the constitutionality of Penal Code section 69 as punishing protected speech because it involved "'a pure question of law which is presented by undisputed facts.'" (*Hines*, *supra*, at p. 1061.) Here, defendant is objecting to the prosecutor's statements regarding the law during closing argument and is not challenging the constitutionality of a statute. In *Hale v. Morgan* (1978) 22 Cal.3d 388, 394 the court found the defendant's objection in the trial court to Civil Code section 789.3 as a "great injustice" did not waive his challenge on appeal to the constitutionality of section 789.3. The court also held a litigant may make a challenge "for the first time on appeal, especially when the enforcement of a penal statute is involved [citation], the asserted error fundamentally affects the validity of the judgment [citation], or important issues of public policy are at issue [citation]." (*Hale*, *supra*, at p. 394.) Here again,

17.

defendant is not challenging the enforcement or constitutionality of a statute, but claiming the prosecutor misstated the law during closing argument. Last, the holding in *Ward v. Taggart* (1959) 51 Cal.2d 736 does not apply to this case. In *Ward*, the court allowed the plaintiff in a civil case to advance an alternate theory of recovery that was sufficient to uphold recovery when the facts as pleaded and proved did not sustain the judgment on the theory of tort. (*Id*. at p. 742.) *Ward* is not applicable here since this is not a civil case and defendant is not offering alternate theories of recovery to sustain the judgment.

Were the merits of defendant's claim properly before us, we would conclude the prosecutor's comments did not amount to misconduct. It is misconduct for a prosecutor to misstate the law generally (see, e.g., *People v. Morales, supra,* 25 Cal.4th at p. 43; *People v. Bell*, *supra*, 49 Cal.3d at p. 538), and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements (*People v. Hill*, *supra*, 17 Cal.4th at p. 829; *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215, superseded by statute on another ground as stated in *In re Steele* (2004) 32 Cal.4th 682, 691). Here, the prosecutor's comments are not contrary to the court's instruction on the law. Defendant argues in his opening brief that "before even getting to murder the state must prove beyond a reasonable doubt both an unlawful killing and malice." But the prosecutor explained this in closing argument, stating that since the evidence showed defendant committed an act causing the death of another and had an intent to kill, which was explained as express malice, the evidence showed second degree murder. This was consistent with the court's jury instructions: "If you decide the defendant committed murder, it is murder in the second degree unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in the instruction." As such, the prosecutor's comments align with both the court's instructions and defendant's comments in his brief.

18.

Essentially, defendant complains the prosecutor undercut the state's burden of proof by telling the jury second degree murder was the starting point for its deliberations. However, the statement was made only after the prosecutor explained how the evidence should lead the jury to a finding of second degree murder. The prosecutor "has the right to fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper." (*People v. Thomas* (1992) 2 Cal.4th 489, 526; accord, *People v. Cole, supra,* 33 Cal.4th at p. 1203 [a prosecutor may discuss and draw reasonable inferences from the evidence at trial].)

We also disagree the prosecutor misstated the law by suggesting the jury ask whether murder should be *downgraded* to manslaughter. As the court properly instructed the jury, a "murder is *reduced* to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion." (Italics added.) Defendant fails to explain how the prosecutor "plainly misstated the law" or undercut the state's burden of proof when the prosecutor's explanation aligned with the court's instructions. Therefore, we conclude defendant's claim of prosecutorial misconduct would also fail on the merits. But even if we agreed with defendant's claim on the merits, defendant cannot demonstrate any prejudice. Any error by the prosecutor in misstating the law was cured by the court's instructions on the law. (See *People v. Boyette*, *supra*, 29 Cal.4th at p. 436 [we presume the jury followed the court's instruction]; *People v. Avila* (2006) 38 Cal.4th 491, 574.)

To the extent defendant alternatively raises an ineffective assistance of counsel claim, defendant fails to demonstrate his counsel's performance was deficient under an objective standard of professional reasonableness or that he was prejudiced by the prosecutor's comments. (*People v. Ochoa* (1998) 19 Cal.4th 353, 445; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) As discussed above, we cannot conclude the

19.

prosecutor misstated the law and therefore, counsel is not ineffective in failing to raise meritless or fruitless objections.  (*Ochoa*, *supra*, at p. 463.)  Even if there were a meritorious basis to object, the decision whether to object is "'inherently tactical,'" and "a failure to object will rarely reflect deficient performance by counsel."  (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1335, abrogated on another ground as stated in *People v. Hardy* (2018) 5 Cal.5th 56, 100; see *People v. Kelly* (1992) 1 Cal.4th 495, 520.)  And here, where "the record on appeal ""'sheds no light on why counsel acted or failed to act in the manner challenged[,] …' the claim on appeal must be rejected."'"  (*People v. Vines* (2011) 51 Cal.4th 830, 876, overruled on other grounds by *Hardy*, *supra*, at pp. 103–104; see *People v. Hoyt* (2020) 8 Cal.5th 892, 958–960.)  Nor can defendant demonstrate prejudice since, as discussed above, any misstatement in the law was remedied by the court's instruction on the law.  (See *People v. Boyette*, *supra*, 29 Cal.4th at p. 436.)  Therefore, defendant fails to demonstrate he received ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

PEÑA, J.

WE CONCUR:


DETJEN, Acting P. J.


MEEHAN, J.

20.